Kirr et al. *v.* Suwak, Appellant.

Waschak et al. *v.* Suwak, Appellant.

Argued October 2, 1939. Before Kephart, C. J., Schaffer, Maxey, Linn, Stern and Barnes, JJ.

W. F. *Illig,* with him M. E. *Graham, John H. Sorg, Marriner & Wiley* and *Gunnison, Fish, Gifford & Chapin,* for appellant.

*Robert E. Burnside,* of *Burnside, Moninger & Burnside,* with him *Bloom & Bloom,* for appellees.

OPINION BY MR. JUSTICE MAXEY, December 8, 1939:

Each of the minor plaintiffs, Mary Kirr, and Eva Waschak, together with the respective parents, brought actions in trespass against defendant to recover damages for injuries sustained when they were thrown from the rear of a truck operated by defendant. Appellees, plaintiffs below, allege that the accident "was caused solely by reason of the excessive speed at which the truck was being operated at the time it came to a sharp curve," causing it to go through a guard fence. Appellant, defendant below, contends that both minor plaintiffs were guilty of contributory negligence because they rode in the back of a small truck, with four occupants in the front seat, in violation of section 1001 of the Motor Vehicle Code of May 1, 1929, P. L. 905, as amended by section 3 of the Act of June 29, 1937, P. L. 2329, which provides as follows:

"Reckless driving is unlawful, and for the purpose of this Act is construed to include the following:

"(b) If investigation into an accident arising from the use and operation of a motor vehicle discloses that the accident occurred due to the front seat of the motor vehicle having been occupied by more than three persons: provided that this provision shall not apply to a motor vehicle the front seat of which has been con-

structed to accommodate more than three persons, and further provided that there is 16 inches of seating capacity for each passenger or occupant so accommodated on said front seat."

Both actions were tried together. In the case of Mary Kirr, the verdict in her behalf was for $4,500 but she remitted $1,500 and judgment was entered in her favor for $3,000. Judgment on the verdict for $842 was entered in favor of her parents. In the case of Eva Waschak, the verdict in her favor was for $3,000 but she remitted $1,000 and judgment was entered in her favor for $2,000. Judgment on the verdict for $735.15 was entered in favor of her parents. Defendant's motions for judgment n. o. v. in the respective cases were overruled. These appeals followed.

The minor plaintiffs left Canonsburg, Pa., on March 6, 1937, in a party of eight young people, consisting, besides themselves, of four girls and two young men, in a small delivery truck having a cab with a window in its back and a steel delivery body. Defendant drove the party to Donaldson's Crossroads. The two young men and two girls, including Mary Kirr, rode on the seat in the cab. The seat measured four feet and one inch at the back and three feet and seven inches at the front. The parties stopped at Donaldson's Crossroads and went into a dance hall and a restaurant there. On the return trip, both of the minor plaintiffs rode in the rear of the truck; two young men and two girls road in the cab. The accident on which this action is based occurred on the return trip.

Plaintiff Mary Kirr, who was almost 17 years of age at the time of the accident, testified that when the parties arrived at their destination they entered a building called the "Capitol" where there was dancing; that about fifteen minutes later four of the young ladies, including herself and the other minor plaintiff, went across the street to the "Hollywood" barbecue stand (in front of which defendant had parked the truck) "to get

some pop"; and that Julia Matyuf, one of the two girls who remained with the two young men at the "Capitol", came in and told them that defendant was leaving and "if we didn't come, he was going to leave us." She added: "We all ran out" without finishing the "pop" because "we didn't have no other way to get home." She was corroborated in the above not only by the other minor plaintiff but also by the two other girls who were in the "Hollywood" and by the young lady who beckoned them to hurry. The other girl, who was with the boys and who remained outside by the truck while the girls were being called, also testified as to their "running out" to the truck. Mary Kirr testified further that she went around the truck, saw that "it was crowded" in the front and "got in over the side," that she had just gotten in when defendant started the truck, that she "fell right on the truck's floor" and was "stretched out" with her head near the cab. The six girls in the party all testified that when they were getting into the truck its motor was running and that defendant started the truck with a "jerk". Some of them testified that they were "not even seated yet." They said that defendant was proceeding on a different route to return to Canonsburg when the minor plaintiff, Mary Kirr, told him to turn around and go back the way he came because she did not wish to be seen riding through town in the back of the truck, that to do so he "turned in a driveway" and that, as Mary Kirr explained it, he "jerked us so bad that we just practically huddled over each other." All six girls testified that defendant in driving the truck would "jerk" it by suddenly applying the brake. Mary Kirr described this as follows: He "would put his foot on the brake and we would jerk, and he would go for a while and we would jerk some more." The girl witnesses variously estimated that this "jerking" took place from seven to eleven times from when they left the crossroads until the happening of the accident. The six girls said that when the car was jerked, the heads of the girls

in the back would bump against the cab. Mary Kirr estimated the speed of the truck prior to the accident at 55 to 60 miles an hour, plaintiff Eva Waschak estimated it at 65 miles an hour, and the four other girls' estimates ranged from 60 to 70 miles an hour. Each one of them testified that all of them were "hollering" and "screaming" for defendant to "slow down" and stop jerking the truck, but he refused to do so. As to this, Mary Kirr testified: "We were all screaming . . . and we told him to either slow the car down or we would get out, but he just wouldn't pay no attention to us." Julia Matyuf, who sat alongside of defendant on the front seat, corroborated the minor plaintiff as to her making such a statement to defendant and she (Miss Matyuf) testified that at no time did defendant slow up the truck sufficiently that either of the minor plaintiffs could have gotten out of it with safety. Helen Kovatch, the other girl who sat on the seat, was asked: "What did Andy [the defendant] do when you girls hollered?" She answered: "He just laughed, and the more the girls would hollo the more he would go and jerk the car, so they would bump their heads." She also testified that defendant did not slow the truck up for the girls to get out. Miss Matyuf testified that the "truck went over the bank, through the guard rails, and it didn't stop until after it upset."

Plaintiff Eva Waschak, who was nearly 17 years of age at the time of the accident and who gave substantially similar testimony as the other minor plaintiff, also said that prior to the accident the truck came down a grade at 65 miles an hour, left the road on its left-hand side, went over the guard rail, that she heard the "screeching of the wheels" and the next thing she remembered was that she found herself "under the truck." She also testified that at the time of the accident it was a dark and cold night and that the road was dry. This plaintiff received injuries to her head, shoulder and neck, some bones being broken

in the latter. Plaintiff Mary Kirr testified that she was knocked unconscious and that when she regained consciousness she was "on the ground." The doctor who treated her testified that the X-rays showed that she was "suffering from a fractured pelvis at two points, separation of the right sacro-iliac joint, shock, brush burns of the body and a sprained ankle."

On the question of the plaintiffs' knowledge of how many persons were in the front seat of the truck on its return trip, they testified as follows: Mary Kirr said: "I didn't know who all was in the back of the truck when we started, but when we was about half way home we was all pounding on the back of the truck for him [defendant] to let us out, . . . and he wouldn't and I got up . . . and I knew there was four in the back of the truck." When plaintiff Eva Waschak was asked: "Who got in beside you and Mary in the back of the truck?", she answered: "I don't know; we were all scrambled in; we got in hurriedly and I pulled the fur [collar of her coat] over my face." On cross-examination she said: "The girls told me after that [the accident], who was in the back [of the truck] and where everybody was." One of the other two girls who was in the rear of the truck, was asked: "When you got in the truck and were riding home did you observe who or how many were in the back of the truck with you?" She answered: "No, I didn't." She was then asked: "Why didn't you?" She replied: "Well, we just got in a little fast and I didn't look around; I was looking for my sister, and I think I saw her, so I just let it go at that, so I didn't care where she rode." She said that she learned that there were four girls in the rear of the truck "sometime during the trip home." The remaining girl who was in the back of the truck said that the first she knew that there were four persons in the back of it was "after the accident."

Charles Cushey, another witness called on plaintiffs' behalf, testified that he was driving his car which was "pulling up to a stop sign" at the intersection near which defendant had the accident when he saw defendant coming "over the hill," 200 or 300 feet away. He estimated the speed of defendant's truck as it passed his car at "around 60 miles" an hour. He was asked: "Did you notice anything as the truck passed your car where it was standing by that stop sign?" He answered: "It shook the car, the wind of it." He was also asked: "Where was the truck at the time you looked around" (after it had passed him)? He replied: "It was going into that fence, guy fence", (which he said was "100 feet" from where he was). He said that when the "truck upset," he "turned right around to the scene of the accident." He was asked: "Did you see the truck change its speed at any time it came down that road? A. No, sir." He also testified that "the truck came down on its side of the road." He said he asked defendant at the scene of the accident "what happened" and "he said he didn't know exactly what happened himself, when he seen that turn and seen the fence it was too late to do anything." Another of plaintiffs' witnesses, Louis Marra, who was seated in the car alongside of Mr. Cushey at the time of the accident, corroborated the latter's testimony.

Defendant testified that he started the car gradually and not with a "jerk," that he did not travel faster than 35 or 40 miles an hour and that he did not "jam on the brakes" to jerk the truck and that the accident was caused by his swinging his car away from an oncoming car on his side of the road. He declared that he did not see the guardrail (which he ran into) until he was 5 or 10 feet away from it. He admitted that he "knocked over three guardrail posts." He denied hearing the girls' protests against his driving.

Charles Goga, a young man who was in the party and who was sitting in the seat of the cab at the time

of the accident, corroborated defendant's testimony about not starting the car with a "jerk" and about its moderate speed.

The issue as to defendant's negligence was clearly for the jury and its finding that defendant was negligent was fully warranted.

Appellant contends that the minor appellees were guilty of contributory negligence because they rode in a truck whose only seat was overcrowded. Appellant cites the cases of *Mahoney v. City of Pittsburgh,* 320 Pa. 44, 181 A. 590, and *McIntyre v. Pope,* 326 Pa. 172, 191 A. 607. These cases do not sustain appellant's position as they differ in their facts from the case at bar. In the first case, this court pointed out that the plaintiff "assisted in bringing about the crowded condition of the car [there were four people in the front seat and four people in the rumble seat]. He was cognizant of the danger (he was an experienced driver) and was therefore guilty of contributory negligence." In the latter case, where the injured plaintiff was one of four adults sitting in the front seat of an automobile involved in an accident due to the driving of the car at an excessive rate of speed around a curve, we laid down this principle: "Where more than three adult persons sit in the front seat of an automobile, thus overcrowding it and restricting the driver's freedom of action to exercise necessary control in the event of emergencies, and injury results, those overcrowding the front seat are guilty of contributory negligence as a matter of law. See Act of May 1, 1929, P. L. 905, sec. 1001; *Mahoney v. City of Pittsburgh,* 320 Pa. 44 [181 A. 590]. . . . The hampering of appellee's control coexisted and operated with his own recklessness in driving at an excessive speed in causing the collision, and cannot be viewed in any other light than as a contributing cause." The accident now under review was palpably caused by defendant's almost wanton recklessness.

It is well settled that the standard of care which the law of negligence requires is that exercised by the average prudent individual under similar circumstances. The existence of negligence in a given situation must be determined upon the facts as they appeared at the time and not by a judgment based upon actual consequences. No person's *fore*sight is required to be as good as a similar person's *hind*sight. When these minor plaintiffs were hurriedly summoned from their refreshments to enter defendant's car under the penalty of being left behind, they cannot be charged with negligence in getting into the car as they did without first surveying the front seat and carefully noting the number of its occupants. This would be to require of these young women a standard of care far beyond that customarily exercised by the average prudent individual. No passenger in a car is bound to *anticipate* a driver's negligence.

In its opinion refusing to enter judgment for defendant n. o. v., the court below pertinently pointed out that the plaintiffs in these cases were occupants of the body of the truck and that this body was separated from the cab by a solid back through which there was a window and that the accident occurred at night and that a knowledge of the number of persons in the front seat would have to be gained by looking through the window or by a mental calculation in which the number in the cab would be subtracted from the total number of the party, assuming that all the party were returning. The court further appropriately commented that here "there was a sudden departure, requiring the parties to get in without opportunity for investigation and such a handling of the truck [by the driver] as to keep up a state of confusion."

The judgments are affirmed.